

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

Plaintiff,

v.

ONE HUNDRED NINETY-NINE
THOUSAND ONE HUNDRED
TWENTY DOLLARS IN UNITED
STATES CURRENCY ($199,120.00)

and

FIFTY THOUSAND DOLLARS
IN UNITED STATES CURRENCY
($50,000.00),

Defendants.
_____/

03-20944

CIV-SEITZ

MAGISTRATE
BANDSTRA

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, United States of America, files this complaint for forfeiture in rem and alleges as follows:

### NATURE OF THE ACTION

1. This is an action to forfeit to the use and benefit of the United States of America the following:

>  a. One Hundred Ninety-Nine Thousand One Hundred Twenty Dollars ($199,120.00) in United States currency; and

>  b. Fifty Thousand Dollars ($50,000.00) in United States currency

(hereafter "the defendant property") for violations of 18 U.S.C. §§ 1956 and 1957, pursuant to 18

1



U.S.C. § 981(a)(1)(A), for violations of 31 U.S.C. § 5313(a), pursuant to 31 U.S.C. § 5317(c)(2), and pursuant to 21 U.S.C. § 881(a), as monies furnished in exchange for a controlled substance in violation of the federal narcotics laws and proceeds traceable to such exchanges.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1355(b)(1), 1355(b)(2) and 1395, because the defendant property was seized in the Southern District of Florida and will remain in this district throughout the pendency of this action.

## BACKGROUND

4. The Black Market Peso Exchange ("BMPE") is an underground financial system used to evade reporting and record keeping requirements mandated by the Bank Secrecy Act (31 U.S.C. § 5311, et. seq.), as well as Colombian foreign exchange and import laws and tariffs. The system works, in part, as follows:

a. Colombian narcotics cartels export narcotics to the United States where they are sold for U.S. dollars. In Colombia, the cartels contact a third party – a peso broker – to launder their drug money. The peso broker enters into a "contract" with the Colombian cartel wherein he agrees to exchange pesos he controls in Colombia for U.S. dollars the cartel controls in the United States. Once this exchange occurs, the cartel has effectively laundered its money and is out of the BMPE process. The peso broker, on the other hand, must now launder the U.S. dollars he has accumulated abroad.

b. The peso broker uses contacts in the United States to place the drug cash he purchased from the cartel into the banking system. The peso broker, still operating in Colombia, now has a pool

of narcotics-derived funds to sell to seemingly legitimate Colombian importers and investors.

c. Colombian importers place orders for items and make payments through the peso broker. Again, the peso broker uses contacts in the United States to purchase the requested items from manufacturers and distributors. The peso broker pays for these goods using a variety of methods, including United States bank accounts.

d. The purchased goods are shipped and then smuggled or otherwise fraudulently entered into Colombia. The Colombian importer takes possession of his goods, having avoided paying Colombian import and exchange tariffs, and pays the peso broker for the items with Colombian pesos. The peso broker, who has made his money charging both the cartels and the importers for his services, uses those new pesos to begin the cycle once again.

## SPECIFICS OF THE UNDERLYING TRANSFERS

5. On or about November 8, 2002, agents from the Internal Revenue Service Criminal Investigation, and other law enforcement officers (hereafter collectively referred to as "the agents") were conducting surveillance at a gas station located in a shopping center at S.W. 122 Avenue and Coral Way. While conducting surveillance, agents observed a red Chrysler Concord, occupied by two individuals, subsequently identified as Pedro REYNOLDS and Ivan TABARES, parked at the gas station. The agents further observed an individual driving a blue Mercury Grand Marquis. The driver of the blue Mercury parked his car, got out of the car, opened the trunk, and pulled something out of the trunk. The red Chrysler pulled up alongside the blue Mercury and the driver of the blue Mercury placed the item he took from his trunk and placed it into the trunk of the red Chrysler. The driver of the blue Mercury got back into his car and both cars left the area.

6. The red Chrysler was followed by the agents to the business location of RG International

Aircraft Corp.[1] Agents observed Pedro REYNOLDS get out of the car and enter the business. The agents also observed Ivan TABARES park the car, get out of the car, open the trunk, and remove a large brown shopping bag with handles. At this time, Ivan TABARES was approached in the parking lot by the agents and questioned about the bag. Ivan TABARES stated the bag contained U.S. currency. All parties entered the business with the shopping bag.

7. The agents requested from REYNOLDS and REYNOLDS provided consent to search the premises.

a) A canine trained in the detection of narcotics alerted positively to the large brown shopping bag. The package was found to contain a large "Old Navy" plastic shopping bag which contained three 12" x 15 ½" yellow office envelopes which contained 17 bundles of $20 bills strapped with rubber bands. Each bundle contained a small torn piece of paper with the notation "$10,000." An 8 ½" x 11 ½" yellow envelope was also found in the brown shopping bag outside of the "Old Navy" bag. This envelope contained three bundles of $20 bills strapped with rubber bands. Each of these three bundles contained a small torn piece of paper with the notation "$10,000."[2]

b) The canine alerted a second time to a wooden crate in the back storage room. Inside the wooden crate was a book bag containing $50,000.00 in United States currency.[3]

8. The agents requested from Pedro REYNOLDS and Pedro REYNOLDS provided a verbal

---

[1] RG International Aircraft Corp. is a Florida corporation owned and operated by Pedro REYNOLDS.

[2] The bank count on the currency from the shopping bag was $199,120.00 (9,953 twenty dollar bills).

[3] The bank count on the currency found in the book bag was $50,000.00 (2000 twenty dollar bills and 200 fifty-dollar bills).

waiver of his rights and agreed to answer questions. Pedro REYNOLDS provided the agents with the following information:

a) REYNOLDS is the business owner of RG International Aircraft Corp. He is a broker specializing in aircraft and aircraft parts.
b) REYNOLDS has known Ivan TABARES since 1999. Ivan TABARES is a broker who locates clients in South America. TABARES finds willing and able buyers and REYNOLDS locates aircrafts or aircraft parts. He and TABARES negotiate commissions prior to all sales.
c) REYNOLDS was asked by TABARES to accompany him to pick up the currency. REYNOLDS and TABARES picked up the currency in the shopping bag from an unknown male driving a blue Mercury at the gas station. The currency does not belong to REYNOLDS.
d) REYNOLDS has conducted several deals with TABARES in the past where he has received large sums of U.S. Currency.
e) REYNOLDS explained that $178,000.00 of the $200,000.00 picked up was for a deposit on two (2) aircrafts that were pending sale for an unknown buyer that TABARES located in South America but never provided REYNOLDS with personal information.
f) REYNOLDS does not possess a money transmitter license in the State of Florida.
g) REYNOLDS admitted that he had approximately $50,000.00 in United States currency hidden inside a wooden crate in the back storage room.
h) REYNOLDS stated that he received $100,000.00 in cash from a Colombian male one week earlier. The $100,000.00 was delivered in a backpack to REYNOLDS at his business. He did not complete an 8300 form for this transaction.
i) REYNOLDS stated that upon receiving the $178,000.00 from TABARES, he was going to stash it inside the above mentioned wooden crate. He added that during the course of the next couple of weeks he was going to deposit between $5,000.00 and $10,000.00 daily into either his Citibank (AC# 3200341863) or Bank Atlantic (AC# 0055302630) business accounts. He added that he structured cash deposits in order to prevent the bank from filing a suspicious activity report or other required reports (CTRs).
j) REYNOLDS has used Luis NINO, an employee at RG International Aircraft Corp., to make cash deposits at various banks.

9. The agents requested from Ivan TABARES and Ivan TABARES gave a verbal waiver of his rights and agreed to answer questions. Ivan TABARES provided the agents with the following information:

a) TABARES is an airplane parts dealer that lives in Medellin, Colombia.

      b)      TABARES rented the red Chrysler during his trip to Miami, Florida.

      c)      Fernando Basque is an airplane owner located in Medellin, Colombia. Fernando Basque asked TABARES to purchase an airplane and airplane parts for Basque.

      d)      TABARES believes that Basque is involved with narco-dollar transactions.

      e)      TABARES was told by Basque that someone in Miami would contact him on TABARES' cell phone and give TABARES instructions as to how and where to pick up the money for the airplane and airplane parts.

      f)      TABARES was suspicious of the manner in which he was to receive and deliver the money.

      g)      TABARES received several calls from an unknown caller to discuss the pick up of the money.

      h)      TABARES was told by the unknown caller to meet him at the gas station located at SW 122 Avenue and Coral Way. TABARES and REYNOLDS went to the gas station and picked up the currency from an unknown male driving a blue Mercury.

      i)      TABARES was going to buy the airplane and airplane parts from REYNOLDS.

      j)      TABARES has purchased airplane parts from REYNOLDS in the past.

      k)      TABARES is not a licensed money transmitter in the State of Florida.

10. The defendant currency was seized and transported by the agents to the office for safe keeping overnight. The defendant currency was subsequently transported to the Bank for processing.

11. A records check reveals that no currency transaction related reports of any kind have been filed with the Department of the Treasury concerning the defendant currency.

12. Pedro REYNOLDS, Ivan TABARES, and R.G. International Aircarft Corp. are not registered with the State of Florida as currency exchangers or broker.

13. Pedro REYNOLDS made a claim for the defendant currency in the underlying administrative forfeiture proceedings, thus requiring the filing of this judicial forfeiture action.

14. The area of Miami-Dade County, Florida is well-known to law enforcement as a major drug source and money laundering center involving Colombian drug trafficking organizations and associated Colombian money brokers. It is also well-known to law enforcement that these money brokers and their U.S. based agents utilize what is commonly known as a "cell" system to launder the proceeds of drug trafficking. The "cell" system keeps the movement of drug money separate from

the actual movement of drugs, utilizing a series of individuals otherwise unknown to each other by the use of cell phones, beepers and codes. The system is set up to conceal or disguise the nature, source, ownership, and control of illegal drug proceeds by providing secure movement for the laundering of such currency.

15. Utilizing the black market peso exchange, drug traffickers in Colombia are able to sell their illegal cash proceeds while the cash still remains in the United States. When pesos are paid by associated money brokers to the drug traffickers in Colombia, the money brokers or their intermediaries are given control of the illegal cash in the United States. Latin American businessmen who have outstanding debts in the United States then purchase the cash for pesos from these money brokers, although the businessmen never actually take possession of the cash. Instead, the money brokers direct their U.S. based agents to deliver the cash according to instructions supplied by the businessmen, usually to businesses or persons located in Florida. Hence, the "cell" system has been developed over the years as a clandestine method for facilitating the movement of such illegal drug cash.

16. The totality of the circumstances surrounding the events leading to the seizure of the defendant currency is entirely consistent with the activity of a money laundering "cell" system as described above, is inconsistent with any form of legitimate business activity, and when viewed in the light of law enforcement expertise, can only be attributable to the illegal activity described below.

FIRST CLAIM FOR RELIEF
(MONEY LAUNDERING)

17. Plaintiff realleges paragraphs 4 through 16 above as if fully set forth herein.

18. Title 18, United States Code, Section 981(a)(1)(A), subjects to forfeiture "any property,

real or personal, involved in [a violation of 18 U.S.C. §§ 1956 and/or 1957], or any property traceable to such property."

19. Title 18, United States Code, Section 1956, commonly known as the money laundering statute, imposes a criminal penalty upon any person who -

> (a)(1) ... knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or ...
>
> (B) knowing that the transaction is designed in whole or in part –
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity....

20. The term "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and includes any offense listed under 18 U.S.C. § 1961(1). Title 18, United States Code, Section 1961(1)(D), lists as an offense the "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance ... punishable under any law of the United States[.]"

21. A "financial transaction" is defined in 18 U.S.C. § 1956(c)(4) to mean "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments[.]"

22. The term "monetary instrument" is defined in 18 U.S.C. § 1956(c)(5) as "coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders[.]"

23. The term "transaction" includes, as defined in 18 U.S.C. § 1956(c)(3), "a purchase, sale, loan, pledge, gift, transfer, delivery or other disposition ... by whatever means effected.[.]"

24. Title 18, United States Code, Section 1957(a) imposes a criminal penalty upon any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]"

25. A "monetary transaction" is defined in 18 U.S.C. § 1957(f)(1) and includes "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title)[.]"

26. The term "criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) and "means any property constituting, or derived from, proceeds obtained from a criminal offense[.]"

Based on the foregoing, the defendant property constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957 or is traceable to such property and is thereby forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF
### (PROCEEDS)

27. Plaintiff realleges paragraphs 4 through 16 above as if fully set forth herein.

28. Based on the foregoing, the defendant currency constitutes monies furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. § 801, et seq. or proceeds traceable thereto, and is thereby forfeit to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CLAIM FOR RELIEF
## (FAILURE TO FILE)

29. Plaintiff realleges paragraphs 4 through 16 above as if fully set forth herein.

30. A person who engages as a business in dealing in or exchanging currency is defined as a "currency dealer or exchanger" pursuant to 31 CFR 103.11(f). A "currency dealer or exchanger" or "a person engaged in the business of transmitting funds" is a "domestic financial institution" within the meaning of 31 U.S.C. § 5313 and 31 CFR 103.11(I). When a "domestic financial institution" is involved in a "transaction in currency" of more than $10,000.00, it is required to file a currency transaction report pursuant to 31 U.S.C. § 5313(a) and the regulations promulgated thereunder. A "transaction in currency" is defined by 31 CFR 103.11(r) as a transaction involving the physical transfer of currency from one person to another.

31. Pursuant to 31 U.S.C. § 5317(c)(2), any property involved in a violation of 31 U.S.C. § 5313(a), or any property traceable to such violation, is subject to forfeiture to the United States.

Based on the foregoing, the defendant currency constitutes property involved in a transaction in violation of 31 U.S.C. § 5313(a), or is traceable to such violation, and is thereby forfeit to the United States pursuant to 31 U.S.C. § 5317(c)(2).

WHEREFORE, the United States of America requests that the Court issue a warrant and summons for the arrest and seizure of the defendant property; that notice of this action be given to all persons known to have an interest in or right against the defendant property; that the defendant property be condemned as forfeit to the United States of America; and that the Plaintiff be granted

such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: April 10, 2003.

                              Respectfully submitted,

                              MARCOS DANIEL JIMENEZ
                              UNITED STATES ATTORNEY

By: _____

                              MICHELLE B. ALVAREZ
                              ASSISTANT UNITED STATES ATTORNEY
                              Fla. Bar No. 615617
                              99 N.E. 4th Street - 7th Floor
                              Miami, Florida  33132
                              Telephone: (305) 961-9088
                              Fax: (305) 536-4089

                              E-mail: michelle.alvarez@usdoj.gov

## VERIFICATION

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury, that I have read the foregoing Verified Complaint for Forfeiture in Rem and state that the information contained therein is based upon information known and/or imparted to me, and the facts contained therein are true and correct to the best of my knowledge and belief.

*Charles Torres* Special Agent
CHARLES TORRES, Special Agent
Internal Revenue Service Criminal Investigation

Date: April /6 , 2003.

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**03-20944**

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
One hundred ninety-nine thousand one hundred twenty dollars ($199,120.00) in United States currency and Fifty thousand dollars ($50,000.00) in United States currency

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Dade 03-20944

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**CIV-SEITZ**
**MAGISTRATE BANDSTRA**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
AUSA Michelle B. Alvarez
99 NE 4th Street, 7th Floor
Miami, Florida 33132
(305) 961-9088

ATTORNEYS (IF KNOWN)
Reemberto Diaz, Esq.
2929 SW 3rd Avenue, Suite
Miami, Florida 33129

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE), MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | B☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL UNLESS DIVERSITY.)

18 U.S.C. § 981(a)(1)(A), 31 U.S.C. § 5317(c)(2) and 21 U.S.C. § 881(a)

LENGTH OF TRIAL
via 2 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 4/18/03
SIGNATURE OF ATTORNEY OF RECORD
Michelle B. Alvarez

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

This form was electronically produced by Elite Federal Forms, Inc.